UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHEILA D. BOLDEN,

     Plaintiff,                            Civil Action No. 03-74136

v.                                  HON.  JOHN CORBETT O'MEARA
                                     U.S. District Judge
                                     HON. R.  STEVEN WHALEN
COMMISSIONER OF SOCIAL        U.S. Magistrate Judge
SECURITY,

     Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Sheila D. Bolden brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her applications for Supplemental Security Income (SSI) under Title XVI of the Social Security Act.   Plaintiff filed a motion for remand and Defendant filed a summary judgment motion, both of which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below,  I recommend that Defendant's Motion for Summary Judgment be DENIED, and that Plaintiff's Motion to Remand be GRANTED and the case remanded for further proceedings.

## PROCEDURAL HISTORY

On August 11, 1999, Plaintiff filed an application for Supplemental Security Income (SSI),  alleging an onset of disability date of June 1, 1996 (Tr. 76-78).  After the initial denial

-1-

of her claim, Plaintiff filed a timely request for an administrative hearing, conducted on September 18, 2000 in Detroit, Michigan before Administrative Law Judge (ALJ) Karen J. Goheen (Tr. 288-325). Plaintiff, represented by non-attorney Gary Lane, testified. (Tr. 284-320). Dr. Samuel Goldstein, acting as Vocational Expert (VE) also testified (Tr. 320-324). ALJ Goheen found that although Plaintiff was unable to perform any of her past work, she retained the capacity to perform " a significant number of jobs in the national economy" (Tr. 38). On June 5, 2001, the Appeals Council ordered a remand for rehearing, finding that the administrative decision did not comport with the revised medical criteria for evaluating mental disorders (Tr.73). ALJ Goheen held a rehearing on August 19, 2002 (Tr. 326-271). Plaintiff, again represented by Gary Lane, testified (Tr. 329-365). VE Richard Szydlowski testified (Tr. 365-370). On May 29, 2003, the ALJ issued a decision finding Plaintiff capable of performing a significant number of jobs in the national economy (Tr. 25-26). Plaintiff filed for judicial review of the final decision on October 20, 2003.

## **BACKGROUND FACTS**

Plaintiff, born August 29, 1959 was age forty-three when the ALJ issued her decision (Tr. 19). She completed eleventh grade (Tr. 332).[1] Plaintiff's previous work includes jobs as a fast food worker and a child care worker (Tr. 19, 334-336). Plaintiff alleges that depression, obsessive-compulsive disorder (OCD), anxiety, and arthritis prevent her from working (Tr. 341).

---

[1]Contrary to Plaintiff's testimony, the administrative decision states that she completed high school (Tr. 19).

-2-

A.      **Plaintiff's Testimony**[2]

**1. September 18, 2000 Hearing**

Plaintiff testified before ALJ Goheen that she was sixty-one inches tall and weighed one hundred seventy-six pounds (Tr. 288). She stated that she lived in a house with her son, who attended school. She indicated that she dropped out before completing high school (Tr. 291). She testified that she regularly read books, newspapers, and magazines, stating further that she possessed basic writing skills (Tr. 291-292). She stated that her mathematical skills were "[n]ot that good," but acknowledged that she managed her own money and shopped for herself (Tr. 292).

Plaintiff stated that she possessed a driver's licence, but did not drive because of her "phobias" (Tr. 293-294). She reported that she had worked at White Castle, performing a variety of tasks, and at Rite Aid as a cashier (Tr. 294-295). She added that she had worked in a laundry factory and as a child care worker, stating that she still cared for one child on a daily basis (Tr. 296-298).

Plaintiff reported that she took Buspar, Ibuprofen, and Cyclobenzaprine[3] on a daily basis, but experienced daily stomach pain and headaches, stating that she did not believe that the medications relieved her conditions (Tr. 299-300, 303). She stated that she suffered constant pain in her hands, legs, arms, shoulders, and back from arthritis (Tr. 300-301). She

---

[2] The ALJ cites Plaintiff's testimony from the 2000 *and* 2002 hearing in her decision, therefore, the undersigned will summarize both.

[3] Cyclobenzaprine is a generic for Flexeril (Tr. 299).

-3-

stated that she exercised to relieve her pain (Tr. 302).

Plaintiff testified that she arose at six-thirty a.m. and would fix breakfast for her son before sending him to school (Tr. 303). She indicated that she watched television and cooked during the course of the day, but added that daily fatigue obliged her to nap twice a day (Tr. 304). She stated that she would periodically fall asleep and not wake up for the better part of a day (Tr. 304-305). She reported suffering from anxiety in situations where she felt rushed and stated further that she disliked traveling by automobile and often admonished whomever was driving to be more cautious (Tr. 306).

Plaintiff estimated that she could sit comfortably for half an hour and stand for approximately ten to fifteen minutes (Tr. 308). She estimated that she could walk for up to a mile (Tr. 308 ). She indicated that she could not bend and could not lift objects heavier than five pounds (Tr. 308-309). She testified that she washed her hands often, stating that she felt a need to wash her hands anywhere between every fifteen to forty-five minutes (Tr. 309). She indicated that she performed household chores such as changing sheets and laundering clothes and stated that she performed all outdoor chores except shoveling snow (Tr. 314). She indicated that she could groom herself without assistance (Tr. 315). She stated that she communicated with her son's teachers and met with them when necessary, but stated that she went to church only occasionally and did not socialize much (Tr. 317).

### 2. August 19, 2002[4]

---

[4]Plaintiff's testimony which duplicates that given at the 2000 hearing is omitted.

-4-

Plaintiff testified before ALJ Goheen that she broke her ankle three weeks earlier (Tr. 331). She indicated that she took Prozac, Flexeril, and Voltaren on a daily basis (Tr. 338). She indicated that she used medicated pads and Aspercream for her arthritis (Tr. 339). She stated that she treated with a psychiatrist for Obsessive-Compulsive Disorder (OCD) (Tr. 341). She reported that she first experienced OCD at the age of seven, indicating that she felt a need to wash her hands constantly (Tr. 343). She expressed a dislike of germs to the point that she avoided having children around her and stated that she felt uncomfortable going into public restrooms (Tr. 343). She indicated that she had recently canceled a trip due to her fear of automobiles (Tr. 344). She stated that taking Prozac made her sleepy (Tr. 346).

Plaintiff reported that she generally arose at 9:00 a.m., and did not perform much housework (Tr. 348). She stated that cold rainy weather exacerbated her arthritis (Tr. 350). She stated that she experienced headaches on a weekly or bi-weekly basis, reporting an intensity level of nine on scale of one to ten (Tr. 350). She stated that her son or daughter now helped her when she grocery shopped on a monthly basis (Tr. 354). She estimated that she could lift a ten pound bag of potatoes, but added that anything heavier would hurt her back (Tr. 360). She stated that she could stand for half and hour (before she broke her ankle) but sitting for any length of time over half an hour would hurt her back (Tr. 360). She estimated that she could walk three blocks at most without stopping to rest (Tr. 361). She testified that she saw her psychiatrist once every three months (Tr. 362).

### B.    Medical Evidence

In August, 1999, Elsa A. Isip, M.D., indicated on a Michigan Family Independence

-5-

Agency (FIA) form that Plaintiff was unable to work pending a psychiatric evaluation (Tr. 154). Subsequent notes indicate that Plaintiff admitted to past cocaine use and current marijuana use "when [she could] get it" (Tr. 155). Plaintiff complained of depression occurring two to three times a week and reported that she experienced a compulsion to wash her hands twenty to twenty-five times a day (Tr. 155, 157). Plaintiff received a "guarded" prognosis with a GAF of 55[5] (Tr. 155). Plaintiff was referred to a 12-Step program for substance abuse in her area (Tr. 159).

In October, 1999, Leonidas Rojas, M.D., examined Plaintiff on behalf of Michigan Disability Determination Services (DDS) (Tr. 176-177). He recorded that Plaintiff alleged depression from age sixteen, stating further that Plaintiff reported symptoms of OCD (Tr. 177). He found "a paucity of objective findings" to support her complaints of arthritis and generalized joint pain (Tr. 177-178). He noted that Plaintiff "does everything slowly, at her own pace and therefore has difficulty keeping a job" (Tr. 177).

In October 1999 Prameela Baddigam, M.D., performed a consultative psychological examination on behalf of DDS (Tr. 179-181). Dr. Baddigam noted that Plaintiff began taking Serzone two weeks prior to her examination (Tr. 179). He reported that Plaintiff did not exhibit signs of depression, noting that her mood was "jovial" (Tr. 179). She admitted current alcohol and marijuana use (Tr. 179). Plaintiff related to Dr. Baddigam that she had

---

[5]A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR* ), 30 (4th ed.2000).

been discharged by employers for either being too slow or "messing up orders" (Tr. 179). He noted that although Plaintiff alleged OCD, she did not exhibit any signs of such a disorder in the course of the examination, further noting that "there were a lot of contradictions between her symptom description and appearance" (Tr. 179-180). He gave Plaintiff a "good" diagnosis and assigned a GAF of 85-90[6] (Tr. 181).

In November, 1999 a non-treating, non-examining physician completed a Psychiatric Review Technique Form (PRTF), finding substance addiction disorders arising from Plaintiff's marijuana use (Tr. 182). The PRTF indicated that Plaintiff at most experienced only slight functional limitations (Tr. 189). A second PRTF, performed in April, 2000, noted that Plaintiff had been diagnosed with marijuana abuse (Tr. 192). The April, 2000 form indicates that Plaintiff did not experience any functional limitations (Tr. 198).

In May, 2000 Plaintiff began counseling for OCD, anxiety, and phobias (Tr. 208). An August, 2000 letter indicates that Plaintiff underwent five counseling sessions between May and August of 2000 (Tr. 208).

In August, 2000 Plaintiff sought emergency treatment after sustaining injuries in an automobile accident (Tr. 205-207). Ralph D. Scolari, D.O., noted that her examination did not show serious injuries (Tr. 205).

---

[6]American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 32 (*DSM-IV-TR* ), 30 (4th ed.2000). GAF of 81-90 indicates absent or minimal symptoms ... [with] good functioning in all areas, interested and involved in a wide range of activities, socially effective, generally satisfied with life, no more than everyday problems or concerns."

In September, 2000 Plaintiff underwent a psychiatric evaluation by Pravin Soni M.D. (Tr. 215). Dr. Soni identified Plaintiff's problems as OCD, anxiety, depression, poor sleeping, and phobia (Tr. 213). He found Plaintiff's prognosis "guarded and poor for returning to functioning life at this time" (Tr. 214). He rated Plaintiff's GAF at 50, recommending that she start taking Zoloft and BuSpar along with "supportive psychotherapy with cognitive behavioral approach"[7] (Tr. 215).

In October, 2000, Dr. W.K. Brockington completed a FIA form, stating that Plaintiff experienced chronic lumbar myosotis, and that although she could continue personal care activities on her own except for shopping, laundry and housework, Plaintiff could not continue to work at her usual occupation (Tr. 278).

August, 2001, Plaintiff began mental health treatment (Tr. 247). She expressed extreme difficulty controlling compulsive behavior and a similar degree of difficulty in coping with depression and feelings of hopelessness (Tr. 248). In September, 2001 Daniel Appel, D.O., evaluated Plaintiff, assigning her a GAF of 40[8] (Tr. 275). Along with OCD, Plaintiff reported "phobias regarding any kind of transportation, busses, planes, [and] trains" and panic attacks (Tr. 274).

---

[7]A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 34 (*DSM-IV-TR* ) (4th ed.2000).

[8]A GAF score of 31-40 indicates "[s]ome impairment in reality testing or communication ... or major impairment in several areas, such as work, school, family relations, judgment, thinking or mood." *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR* ), 34 (4th ed.2000)

In April, 2002, Rownak Hasan, M.D., performed a consultive psychiatric examination on behalf of DDS (Tr. 216). He noted that she gave contradictory answers concerning substance abuse, stating first that she had not used substances since 1993, then later admitting that she had used marijuana two days prior to her examination (Tr. 216). He found that Plaintiff possessed average self-esteem and intelligence (Tr. 217). He assigned her a GAF of 65, deeming her prognosis "fair," noting that she could manage her own benefit funds[9] (Tr. 218). June 2002, Dr. Appel found Plaintiff unable to work, but could cope with personal care activities (Tr. 244).

### C.        Vocational Expert Testimony[10]

VE Richard Szydlowski classified Plaintiff's past work as a cashier and childcare worker as semi-skilled, in the light category of exertion, and her fast food work as unskilled, also in the light exertional category (Tr. 367). ALJ Goheen posed the following question to the VE:

Q.     ". . . I ask you to assume an individual the same age, education, and work experience as [Plaintiff]. Following diagnosed impairments. Obsessive-compulsive disorder, with also diagnosed impairments. Obsessive-compulsive disorder, with also depression and/or panic disorder. And arthritis or generalized arthralgias leading to the following restrictions, limitations, capabilities. Able to lift and carry up to ten pounds occasionally, only five on a more frequent basis. Needing a sit-stand option. Avoiding repetitive

---

[9] GAF scores in the range of 61-70 indicate "some mild symptoms [of depression] or some difficulty in social, occupational, or school functioning." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR* ), 32 (4th ed.2000).

[10]August 19, 2002 hearing.

-9-

bending at the waist.  And would need to avoid environments that would involve interaction with  – I'm not talking about communication interaction, but a physical interaction with the general public.  Such as having to touch or exchange items or money with the general public, what might be considered an environment that transfer germs or other contact in that respect.  Would such a person be able to do any of [Plaintiff's] past work? (Tr. 368).

The VE replied that given the above limitations, Plaintiff could not perform  her past work, but indicated that Plaintiff could perform a reduced range of sedentary work subject to the above limitations (Tr. 368).  The VE found that Plaintiff could perform 1,000 clerical handling positions, 2,500 assembler-type jobs, 1,000 inspector, checker, or worker type positions, 1,000 surveillance systems monitors, and 1,000 telecommunications jobs, such as appointment setters, survey workers (Tr. 368-369).  The VE testified that if all of Plaintiff's allegations of limitations incorporated into the hypothetical question, Plaintiff would be precluded from gainful employment (Tr. 369).

Next, the ALJ modified her original hypothetical question by adding that due to drowsiness, such an individual could only perform "very simple, routine, repetitive  work, not close to dangerous machinery" (Tr. 370).  The VE replied that given the additional limitation,  such an individual could not perform the telecommunication positions (Tr. 370). Stating his testimony was consistent with the DOT, the VE indicated that the jobs cited represented regional incidence figures for Southeast Michigan (Tr. 370).

D.     The ALJ's Decision[11]

ALJ Goheen found that Plaintiff  suffered from the severe impairments of obsessive-

---

[11] May 29, 2003 decision.

compulsive disorder, anxiety, and chronic lumbar myosotis (Tr. 20).  However, she determined that although Plaintiff had a severe impairment or combination of impairments none met or equaled any impairment listed in 20 CRF Part 404, Subpart P, Appendix 1 (Tr. 20).  The ALJ also found moderate difficulties in social functioning and concentration, persistence and pace (Tr. 23).

She found that while Plaintiff was unable to perform any past relevant work, she retained:

> "[T]he residual functional capacity for work, with no lifting over 10 pounds occasionally or five pounds frequently, with a sit/stand option, no repetitive bending at the waist, no physical interaction with the general public where she might touch [sic] others or transfer items from hand to hand. "
> (Tr. 25).

Stating Plaintiff required "significant restrictions," ALJ Goheen found that Plaintiff could still perform  a significant number of jobs (Tr. 24). Citing the VE's conclusions, the ALJ found that Plaintiff could perform 1,000 clerical handling positions, 2,500 assembler-type jobs, 1,000 inspector, checker, or worker-type positions, 1,000 surveillance systems monitors, and 1,000 telecommunications jobs, such as appointment setters, and survey workers.  The ALJ noted that if Plaintiff were restricted by constant drowsiness, limiting her work to "simple, repetitive, routine tasks not near dangerous machinery," she could still perform all of the jobs above with the exception of the telecommunications positions (Tr. 24-25).  The ALJ found  Plaintiff's allegation of limitations "less than fully credible  (Tr. 25). In support of her credibility determination, the ALJ cited Plaintiff's behavior at the hearing, lack of physical evidence supporting her alleged  OCD, and activities of daily living  (Tr.

23).  The ALJ also noted that Plaintiff's "visits to the doctor and therapist are only quarterly, which is not frequent enough to be consistent with truly invasive or disruptive" (Tr. 23).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985).  Substantial evidence is more than a scintilla but less that a preponderance.  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*  800 F.2d 535, 545 (6th Cir. 1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ.  *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A.    Hypothetical Question and RFC

Plaintiff argues first that both the hypothetical question and RFC composed by the ALJ fail to reflect Plaintiff's mental limitations.  *Plaintiff's Brief* at 3.  Plaintiff cites *Varley v. Secretary of HHS,* 820 F.2d 777, 779 (6th Cir. 1997), which states that a hypothetical question constitutes substantial evidence only if it accurately portrays the individual's physical and mental impairments.   Plaintiff submits that the ALJ's finding that she experienced moderate  difficulties in social functioning  in concentration, persistence and pace was not reflected in the hypothetical question.

Recent case law supports Plaintiff's argument that a hypothetical question must

reflect an individual's limitations. *See Webb v. Commissioner of Social Sec.* 368 F.3d 629 (6th Cir. 2004).   In most respects, the hypothetical question reflected Plaintiff's Step Two, non-exertional impairments of OCD and anxiety.  The ALJ followed up her first hypothetical question by asking the VE if  such an individual could only perform "very simple, routine, repetitive work, not close to dangerous machinery," to which the VE modified his first finding that Plaintiff could  perform clerical handling positions,  assembler-type jobs, inspector, checker, or worker type positions, surveillance systems monitors, and telecommunications jobs by stating that the additional limitations prevented Plaintiff from performing the telecommunications jobs (Tr. 369).

However, the ALJ's finding that Plaintiff experienced deficiencies in concentration, persistence and pace becomes problematic (Tr. 23).  Although the hypothetical adequately acknowledges Plaintiff's lapses in concentration, the hypothetical question and RFC fail to acknowledge Plaintiff's moderate difficulties in maintaining the pace required to sustain full-time employment.   Within the context of the ALJ's discussion of Plaintiff's mental limitations, she  clearly used the term "moderate" as a term of art as found in the PRTF  (Tr. 23).  The pre-2000 evaluative scale rated these deficiencies based on frequency (never, seldom, often, frequent and constant).   While I do not suggest that there is a precise correspondence between the two scales, I note that "moderate" and "often" are each at the mid-point of a five-level range.  In *Bankston  v. Commissioner,* 127 F. Supp. 2d 820, 826 (E.D. Mich. 2000), the Court found that "a mental deficiency occurring 'often' may not be consistent with substantial gainful employment."

Further, Plaintiff's medical records amply support the ALJ's conclusion that Plaintiff suffered from moderate difficulties in maintaining pace.  In October, 1999 Plaintiff told Dr. Rojas her family had a history of OCD (Tr. 177).  Dr. Rojas noted that Plaintiff did "everything slowly, at her own pace and therefore [had] difficulty keeping a job" (Tr. 177). Plaintiff told Dr. Baddigam the same month that employer fired her for being "either slow in doing the work or messing up on taking the orders (Tr. 179).  Dr. Appel noted in September, 2001 that Plaintiff's "content of thought appear consistent with OCD," commenting that he also treated Plaintiff's mother (Tr. 274-275).  Only one examining physician, Dr. Baddigam, found that Plaintiff did not appear to suffer from OCD (Tr. 179-171).

Since substantial evidence supported the ALJ's finding that Plaintiff experienced moderate limitations in pace, such findings must be reflected in the hypothetical question. I find that the hypothetical question and modification posed by the ALJ did not reflect a "complete and accurate assessment" of Plaintiff's mental impairment as found in her decision. *Smith v. Halter,* 307 F.3d 377, 379 (6th Cir. 2001).  Similarly, the VE's conclusion that Plaintiff could perform clerical handling positions, assembly jobs,  inspector, checker, or worker-type positions,  surveillance systems monitors, or telecommunications jobs cannot serve as substantial evidence if it does not reflect Plaintiff's limitations.  Three of the four job categories cited by the VE  require the employee to maintain a reasonable pace during the working day. Only the position of surveillance system monitors appears to reflect Plaintiff's pace limitations.

-15-

Assuming *arguendo*, that Plaintiff's pace limitations do not prevent her from performing the work of a surveillance system monitor or certain sub-categories of the other three jobs listed, the administrative conclusions should nonetheless to the extent possible be applicable to her situation. *See    Sanchez v. Barnhart*, 329 F.Supp.2d 445, 454 (S.D.N.Y.,2004) (The court remanded for "further consideration and clarification," citing the need to " make a precise and informed decision in applying the medical evidence to the universe of jobs available in the economy, as required in the fifth part of the disability test.")

This Court recognizes that "where remand would be an idle and useless formality, courts are not required to convert judicial review of agency action into a ping-pong game." *Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 547 (6th Cir. 2004)(internal citations omitted); *citing NLRB v. Wyman-Gordon,* 394 U.S. 759, 766 n. 6, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969)(plurality opinion).  On the other hand, at Step Five of the administrative inquiry, where the burden of proof shifts to the Commissioner to establish that Plaintiff could perform jobs that existed in substantial numbers, such a conclusion cannot be sustained if based on an incomplete set of Plaintiff's limitations.  Because the Court cannot speculate on how the VE's findings would have differed if the hypothetical had reflected the limitations acknowledged in the administrative conclusion, the Court should remand for further hearings.[12]

---

[12]Plaintiff makes a closely-related second argument that the hypothetical question did not incorporate her Step-Two impairments of OCD and anxiety.  *Plaintiff's Brief* at 5.  As noted above, the ALJ's original hypothetical question actually includes a reference to OCD, then restricts the individual to work that did not require "physical interaction with the general public. . . . [s]uch as having to touch or exchange items or money with the general public .

### B.      Credibility

Plaintiff next argues that the ALJ's credibility determination is tainted by its misinterpretation of her behavior and appearance at the hearing and general misunderstanding of her mental conditions. *Plaintiff's Brief* at 8-9. She states further that the ALJ improperly cited her need to use the restroom during the hearing to cast doubt on her credibility. *Id.*

*Social Security Ruling* (SSR) 96-7p states that it is not sufficient for the ALJ to make a single, conclusory statement that the individual's allegations have been considered or that the allegations are or are not credible. *Id*, 1996 WL 362209, at 34484. The ALJ's decision must be based on specific reasons for the findings of credibility. *Id*. These reasons must be supported by substantial evidence in the record. *Howard v. Commissioner of Social Security,* 276 F.3d 235, 242 (6th Cir. 2002); *Heston v. Commissioner of Social Security,* 245 F.3d 528, 536 (6th Cir. 2001); *Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994). As a general rule, the courts cede enormous latitude to the ALJ's credibility determinations. *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th Cir. 1993). Further, the ALJ's

---

. . [in] an environment that transfer[s] germs or other contact in that respect" (Tr. 368). The ALJ supplemented her hypothetical to include additional limitations, stating that such an individual should perform only "very simple, routine, repetitive work, not close to dangerous machinery" (Tr. 370).

Although the ALJ failed to account for Plaintiff's deficiencies in pace, the hypothetical question which acknowledged that Plaintiff's mental impairments limited her to "simple, routine work," adequately reflected her Step Two findings. *See Lyons v. Commissioner of Social Security,* 351 F. Supp.2d 659, 663 (E.D. Mich.,2004) (the ALJ properly took into took into account Plaintiff's mental limitations by "limiting the possible jobs to simple, unskilled, and routine work"); *Webb,* 368 F.3d at 633.

finding is entitled to deference by the reviewing court. *Richardson, supra,* 402 U.S. at 401.

In this case, the issue is not whether substantial evidence can be culled from the record to support the ALJ's credibility finding, but rather, whether the credibility determination is fatally undermined by the mischaracterization of Plaintiff's frequency of treatment, activities of daily living, and demeanor at the hearing.

The ALJ supported her credibility finding by noting that Plaintiff's "visits to the doctor and therapist are only quarterly, which is not frequent enough to be consistent with truly invasive or disruptive symptoms" (Tr. 23 *citing* Tr. 362). She also observed that although Plaintiff complained of a dry hand problem, she had not sought treatment for dermatological problems (Tr. 23). However, SSR 96-7p, *supra*, at 7-8, states:

> "[T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment. The adjudicator may need to recontact the individual or question the individual at the administrative hearing in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner. The explanations provided by the individual may provide insight into the individual's credibility. . . . [T]he individual's daily activities may be structured so as to minimize symptoms to a tolerable level or eliminate them entirely, avoiding physical or mental stressors that would exacerbate the symptoms."

Significantly, at no point in either hearing did the ALJ ask Plaintiff to explain why she failed to seek more frequent treatment. At other points in the hearing, however, Plaintiff testified that she suffered from phobias about travel, did not drive, and relied on her mother or sister for transportation (Tr. 334, 344, 345). Plaintiff further indicated that routine travel

-18-

triggered anxiety attacks (Tr. 345).

The ALJ also cited Plaintiff's activities of daily living to support her credibility finding stating that "[Plaintiff's] activities belie her reports of disability [.] [S]he is able to cook, clean, attend to her personal needs, care for her children, go to church on occasion and go to the store with relatives" (Tr. 23).  However, Plaintiff indicated that she needed her son's assistance to make a monthly grocery trip and had only gone to church on one occasion in the past four months  (Tr. 348, 354).

Further, the ALJ's summary of Plaintiff's activities hardly characterize her living conditions as indicated by the record.  A caseworker  visiting  Plaintiff's home in March, 2002 indicated that Plaintiff's house "lacked safe food storage," showed "signs of rodent/insects," and was either surrounded by or immersed in debris (Tr. 266).  An earlier referral  was made to the St. Vincent de Paul Society because Plaintiff apparently lacked a refrigerator (Tr. 262).  Plaintiff, the victim of rape at the age of 16, appeared  to be living in practically uninhabitable circumstances (Tr. 177).

The ALJ supported her credibility finding by pointing out that although Plaintiff professed a dislike of public restrooms, "she requested a break during the second hearing to go the bathroom" (Tr. 23).  As a matter of basic dignity, Plaintiff's  need to use restroom facilities during the course of her hearing should not be used to dispute her claims that she suffers from OCD.  Second, Plaintiff's use of a public restroom does not discredit her testimony that she suffers from OCD.  Just what alternative course of action did the ALJ contemplate that she take under the circumstances?  Worse yet, when Plaintiff returned to

the hearing room, the ALJ asked her to state her activity in the restroom in explicit terms (Tr. 357). The ALJ discontinued this line of questioning only after Plaintiff, (expressing herself with more delicacy than the ALJ) acknowledged that along with washing her hands, she "had used the facilities" (Tr. 357-358). At both hearings, the ALJ noted that Plaintiff did not appear to suffer from dry hands, noting at the first hearing that Plaintiff's "nails [were] very nicely done," then asked her when she had polished her nails and "[h]ow long do your [sic] nails last? (Plaintiff answered that she had polished them herself the night before the hearing and stated that her manicure would "not [last] long") (Tr. 313).

Although Plaintiff has not presented an overwhelming case for benefits, for the reasons cited in section A and this section, a remand for further administrative hearings is required. *See Faucher v. Secretary of Health and Human Services*, 17 F.3d 171, 176 (6th Cir. 1994) (Entitlement to benefits is established only if "the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking.")

In closing, the Court notes that the Supreme Court *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955) found that "[t]he right to a trial by an impartial decision maker is a basic requirement of due process." Further, "the decision maker must also avoid even the appearance of bias." *Barthelemy v. Barnhart 107 Fed.Appx.* 689, 694, 2004 WL 1873224, 4 (7th Cir. 2004). However, courts do not lightly conclude that a judicial bias claim has been established. *See United States v. Microsoft Corp.,* 56 F.3d 1448, 1463 (D.C.Cir.1995). While this Court must begin with the presumption that the ALJ was

-20-

unbiased, *see Schweiker v. McClure,* 456 U.S. 188, 195-196 (1982), such a presumption can be rebutted by showing that the ALJ "displayed deep-seated and unequivocal antagonism that would render fair judgment impossible," *Liteky v. United States,* 510 U.S. 540, 556 (1994), However, "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women ... sometimes display" do not establish bias." *Liteky,* 510 U.S. at 555-56.

While this Court cannot go so far as to say with certainty that the ALJ demonstrated bias, her invasive questioning concerning Plaintiff's restroom activities and efforts to prove that  Plaintiff's nail-polishing the night before the hearing refuted her allegations of OCD, suggest the *appearance* of bias. Plaintiff's efforts to make a good appearance at the administrative hearing despite her squalid living conditions should not have been used to undermine her disability claim. *See Davis v. Sullivan,* 1991 WL 90915, 6 (D.N.J. 1991)(The ALJ's failure to show the claimant "the proper level of respect, when combined with a denial of benefits inevitably creates an appearance of prejudice.")  Similarly, such an appearance has been created in the present case.  In lieu of granting the relief requested in Plaintiff's motion for a remand for benefits, the case should be remanded to the Commissioner of Social Security for a full and fair hearing before a different Administrative Law Judge.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be DENIED, and that Plaintiff's Motion for Remand be GRANTED and the case

remanded for further proceedings.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: May 31, 2005

CERTIFICATE OF SERVICE

-22-

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on May 31, 2005.


s/Gina Wilson
Judicial Assistant